Mozella SIMS–EILAND, Plaintiff,

v.

DETROIT BOARD OF EDUCATION,
Defendant.

No. 00–CV–75928–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 5, 2001.

Mozella Sims–Eiland, Detroit, MI, pro se.

William F. Dennis, Riley & Roumell, Detroit, MI, for defendant.

Wesley Davis, Detroit, MI, pro se.

Roland Davis, Detroit, MI, pro se.

## *MEMORANDUM OPINION AND ORDER*

HOOD, District Judge.

### I. *BACKGROUND/FACTS*

This is the third cause of action filed by Plaintiff Mozella Sims–Eiland against Defendant Detroit Board of Education. Plaintiff was employed as a high school social studies teacher with Defendant at Pershing High School. On December 10, 1990, Plaintiff was relieved of her classroom teaching responsibilities because the principal at Pershing High School believed Plaintiff was exhibiting erratic behavior. The principal directed Plaintiff to the School District's Employee Assistance Program for a mental health evaluation to determine her fitness to perform her duties as a classroom teacher. Dr. Keith Lepard, the District's outside board certified psychiatrist, examined Plaintiff and based on his findings and diagnosis, Plaintiff was placed on paid medical leave of absence. Plaintiff was then placed on unpaid medical leave of absence on April 22, 1991 when her accumulated sick days were

exhausted. No further personnel actions were taken by the Defendant against Plaintiff. She continued on an unpaid medical leave of absence status until July 1, 1999 when Plaintiff submitted her voluntary resignation of employment with Defendant. The resignation was submitted on September 9, 1999, to be effective July 1, 1999.

Plaintiff filed two charges with the Equal Employment Opportunity Commission ("EEOC") on December 17, 1991 and May 1, 1992 alleging that Defendant discriminated against Plaintiff based on race, sex, religion and retaliation. Right to sue letters were issued by the EEOC. Plaintiff initiated her first action in the Eastern District of Michigan against Defendant on December 8, 1992 under Title VII, Case No. 92–CV–76328–DT. The action was originally assigned to the Honorable Avern Cohn and subsequently assigned to this Court. A bench trial was held beginning December 13, 1994, ending November 15, 1996, with approximately twenty-eight (28) trial days. This Court entered its Memorandum Opinion and Order and Judgment on September 30, 1997 in favor of Defendant and against Plaintiff. Plaintiff appealed the September 30, 1997 Judgment to the Sixth Circuit of Appeals which was later dismissed on September 30, 1998 for want of prosecution.

Before Judgment was entered in the first action, on July 17, 1997, Plaintiff filed a new charge with the EEOC alleging that Defendant unlawfully retaliated against her because of her then pending Title VII action. The EEOC issued a right to sue letter on July 22, 1998 and Plaintiff thereafter filed her second cause of action against Defendant on September 29, 1998 under Title VII. In her second action, Plaintiff alleged race, color, gender and religious discrimination. The second case was assigned to the Honorable George E. Woods, Case No. 98–CV–73914–DT. In addition to Defendant, Plaintiff named her next door neighbors, Mr. and Mrs. Reginald Cunningham, as defendants. Judge Woods dismissed the individual defendants. On November 18, 1999, Judge Woods issued an Order granting Defendant's Motion to Dismiss and entered a Judgment in favor of Defendant and against Plaintiff. Judge Woods held that Plaintiff's claims, other than the retaliation claim, were barred by *res judicata.* Any new claims, other than the retaliation claim, were dismissed for failure to exhaust administrative remedies by failing to file a charge with the EEOC on those claims. As to the retaliation claim, Judge Woods held that Plaintiff failed to establish a *prima facie* claim of retaliation because Plaintiff could not show that Defendant took any employment action against Plaintiff as a result of Plaintiff's first action against Defendant since no personnel action had been taken by Defendant after Defendant had placed Plaintiff on unpaid medical leave of absence on April 22, 1991. (Woods Nov. 18, 1999 Opinion, Ex. C, Defendant's Brief) Plaintiff appealed the second case to the Sixth Circuit Court of Appeals which was dismissed on April 28, 2000 for lack of jurisdiction because Plaintiff did not timely file her appeal.

On August 10, 2000, Plaintiff filed an EEOC charge of discrimination against Defendant alleging race, sex, religion, national origin, age, disability and retaliation. The EEOC charge claims that Defendant discriminated against Plaintiff between August 1, 1999 and July 16, 2000, after Plaintiff had submitted her voluntary resignation with Defendant. In her EEOC charge, Plaintiff claims, "I have several neighbors who also have employment relationships with the Board. I have found that since the end of my employment, I have been subjected to on-going harassment by and threats from my neighbors."

The EEOC issued a right to sue letter on October 23, 2000. On December 4, 2000, Plaintiff filed the instant third complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec.2000e–2, claiming race, color, gender, religion, and national origin discrimination, the Americans with Disabilities Act of 1999 ("ADA"), 42 U.S.C. Sec. 12112 *et seq.*, for discrimination based on Plaintiff's disability, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. Sec. 621, *et seq.*, for discrimination based on age. The dates of the discriminatory acts in the Complaint differ from Plaintiff's EEOC charge. Plaintiff's Complaint indicates that the discriminatory acts occurred between September 30, 1986 to September 30, 2000. The only named defendant is the Detroit Board of Education.

A scheduling order was issued in this matter setting a discovery deadline for July 30, 2001. Neither party engaged in any substantive discovery. Both parties filed motions which are now before the Court. It is noted that Plaintiff has apparently issued subpoenas, including her neighbors, to appear for testimony at the hearing scheduled for September 17, 2001, although the parties have not indicated that testimony is required and the Court has not ordered testimony in connection with the motion hearings.

## II. ANALYSIS

### A. *Plaintiff's Motion to Bar Camera and Video Spying*

██ Plaintiff claims that her neighbors, Lorraine and Reginald Cunningham, are sexually harassing her and are spying and video taping Plaintiff.[1] Plaintiff states that "the Detroit Board of Education Sexual Harassers must Respect Mrs. Sims–Eiland Right to Privacy." (Plaintiff's Motion) Plaintiff claims that "the Detroit Board of Education was aware that they wanted to have an on going sexual harassment environment on the Plaintiff." (Plaintiff's Motion) At oral argument, Plaintiff claimed Mr. Cunningham appeared at a 1993 Board of Education meeting.

In response, Defendant categorically denies Plaintiff's allegations that it is spying on Plaintiff or using camera or video technology to do so. Defendant has not cited any law to support her request nor has she submitted any evidence that it is Defendant who is spying or video taping Plaintiff. Defendant claims that this motion is another example of Plaintiff's vexatious litigant tactics to harass Defendant and increase the cost of litigation, while hiding behind her *in propria persona* status. Defendant argues that this motion is putative and has no merit.

It is noted that the Cunninghams are not parties to the instant case.[2] Plaintiff has not cited to any law that allows the Court the authority to enjoin Plaintiff's neighbors, who are not parties to the case, from taking videos of Plaintiff, if in fact they have done so. It is further noted that the Cunninghams were dismissed by Judge Woods in the second cause of action.

---

1. Plaintiff asserted at the hearing that the Cunninghams had a sign displayed on their lawn indicating support for the undersigned's spouse, Nicholas Hood III, in the September 11, 2001 primary election for the Mayor's office, City of Detroit. The Court noted on the record that she did not have any personal knowledge whether in fact the Cunninghams had the sign on their lawn. The undersigned asked Plaintiff if she wanted the undersigned to recuse herself from Plaintiff's case. Plaintiff replied that she did not want the undersigned to recuse herself from the case.

2. The subpoena issued by Plaintiff for the Cunninghams to appear at the hearing is quashed.

This action is a Title VII case against a person's employer and a federal cause of action. Plaintiff has not shown that she is employed by the Cunninghams. It appears that Plaintiff is asserting an invasion of privacy claim against her neighbors, which is a state law tort claim, and is not properly before this Court. Any state law tort claim against her neighbors may be brought by Plaintiff in State Court.

Additionally, Plaintiff has not submitted any evidence that Defendant Detroit Board of Education is spying or videotaping Plaintiff nor that Defendant directed the Cunninghams to do so. Discovery has passed. Plaintiff did not engage in discovery in this matter. Plaintiff has not shown Defendant is spying on Plaintiff. Plaintiff is no longer an employee of Defendant. Plaintiff's motion to bar camera and video spying should be denied.

## B. *Defendant's Motion for Summary Judgment*

### 1. *Standard*

■ The Court is mindful that federal courts hold the *pro se* complaint to a "less stringent standard" than those drafted by attorneys. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). This Court has liberally construed Plaintiff's Complaint and the documents submitted by Plaintiff.

Rule 56(c) provides that summary judgment should be entered only where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548. A court must look to the substantive law to identify which facts are material. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### 2. *Res Judicata*

In this third case against Defendant, Plaintiff alleges in her Complaint that Defendant continues to discriminate against Plaintiff because of her race, color, gender, age, religion, national origin, ADA-defined disability and that such conduct is on-going and occurred between September 30, 1986 to September 30, 2000. (Plaintiff's Complaint) The underlying EEOC charge claims the cause of discrimination is based on race, sex, religion, national origin, retaliation, age, and disability. Plaintiff in the EEOC charge claims the discrimination took place from August 1, 1999 to July 16,

2000. (Charge No. 230A01364) Plaintiff states in her EEOC Charge, "I have several neighbors who also have employment relationships with the Board. I have found that since the end of my employment, I have been subjected to on-going harassment by and threats from my neighbors." (*Id.*)

▇▇ In its modern form, the doctrine of *res judicata* involves both "claim preclusion" and "issue preclusion." See *Migra v. Warren City School District Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Claim preclusion involves three elements: 1) there must be a final judgment on the merits in the prior lawsuit; 2) the same claims are involved; and 3) the same parties or their privies are involved. *EEOC v. United States Steel Corp.*, 921 F.2d 489, 493 (3rd Cir.1990); *Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *James v. Gerber Products Co.*, 587 F.2d 324, 327–28 (6th Cir.1978). *Res judicata* requires that a plaintiff initially raise all claims in prior suits and therefore bars those claims from being litigated at some future time. See *Rivers v. Barberton Board of Education*, 143 F.3d 1029, 1031–32 (6th Cir.1998). Issue preclusion (or collateral estoppel) requires the court to consider four elements: 1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; 2) whether the prior adjudication resulted in a judgment on the merits; 3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and, 4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue on the prior suit. *Nichols v. St. Louis*, 837 F.2d 833 (8th Cir.1988); *Sanders .Confectionery Products, Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir.1992), The doctrine of *res* judicata "generally prevents relitigation in a subsequent proceeding involving the same party adversary of any issue that was or might have been decided in a prior judicial decision." *Lesher v. Lavrich*, 784 F.2d 193, 194–95 (6th Cir.1986).

As to claims preclusion, judgments were entered on the prior two lawsuits against Plaintiff and in favor of Defendant. The first element has been met. The parties are identical in the instant suit as in the prior two lawsuits. The third element has also been met.

▇▇ In the first case, the claims involved race, sex and religion discrimination, retaliation, right to privacy, First Amendment rights to religion and free speech, disparate pay, hostile environment based on sexual and racial harassment and due process violations. The second lawsuit involved discrimination based on race, color, gender and religion and retaliation. The instant action alleges race, color, gender, age, religion, national origin and ADA-defined disability. All three lawsuits involve Plaintiff's employment with Defendant. The latest conduct alleged in the prior two cases was the retaliation claim which occurred on April 14, 1997. Judge Woods dismissed the retaliation claim for failing to establish a *prima facie* case. It is noted that the dates in the instant Complaint and the underlying EEOC charge are different. In the instant Complaint, Plaintiff claims discriminatory acts between September 30, 1986 through September 30, 2000. In the underlying EEOC charge, the discriminatory acts are between August 1, 1999 through July 16, 2000. Because two Judgments have been entered which involved conduct through April 14, 1997, the claims through that date, including race, color, sex/gender, religion and national origin discrimination and retaliation are barred by *res judicata*.

As to Plaintiff's two new claims brought in her underlying EEOC charge of age, under the Age Discrimination in Employment Act ("ADEA"), and disability, under the Americans with Disabilities Act ("ADA"), these two claims could have been brought under either of Plaintiff's two previous lawsuits. The conduct in the ADEA and ADA claims arise from the same facts involved in the prior two lawsuits—relieving Plaintiff of her classroom duties on December 10, 1990 and placing Plaintiff on unpaid medical leave status on April 22, 1991. Plaintiff had the opportunity to fully and fairly litigate any claim or issue which could have been raised under either the prior two lawsuits. Plaintiff's two remaining claims under the ADEA and the ADA are barred by *res judicata*, under both the claim and issue preclusion branch, for any conduct by Defendant through April 14, 1997.

### 3. *Time–Barred*

■ Defendant further claims that Plaintiff's claims should be dismissed because they are time barred under Title VII, the ADA, and the ADEA. Under Title VII, the ADA and the ADEA, acts occurring 300 days prior to the time a plaintiff files a case with the EEOC are time barred. *Alexander v. Local 496*, 177 F.3d 394, 407 (6th Cir.1999)(Title VII actions must be filed "within 300 days of the alleged discriminatory act"); *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 309 (6th Cir.2000)("Under the ADA, a claimant who wishes to bring a lawsuit claiming a violation of the ADA must file a charge of discrimination with the EEOC within 300 days of the alleged discrimination."); and *Jackson v. Richards Medical Co.*, 961 F.2d 575, 578 (6th Cir. 1992)(ADEA actions must be filed within 300 days of the alleged discriminatory act).

On August 10, 2000, Plaintiff filed the underlying EEOC charge. Under Title VII, the ADA and the ADEA, her claims against Defendant are strictly limited to acts which would have taken place only after October 15, 1999, 300 days prior to the filing of the underlying charge with the EEOC. Plaintiff's claims are time barred since any acts alleged to have been made by Defendant occurred prior to October 15, 1999—specifically, Plaintiff's removal from her job duties on December 10, 1990 and placing Plaintiff on unpaid medical leave on April 22, 1991. The affidavit submitted by Defendant indicates that the Detroit Board of Education did not take any further or additional personnel action or disciplinary action against Plaintiff between April 22, 1991, when Plaintiff was placed on medical leave of absence and June 30, 1999, the day before the effective date of Plaintiff's voluntary resignation. (Beverly E. Schneider Aff., Par. 7) Plaintiff resigned voluntarily from her employment effective July 1, 1999, beyond the 300 days time limitation. Plaintiff has not submitted any evidence to rebut Defendant's claim that it has taken no actions against Plaintiff since April 22, 1991. Even if the Court were to consider as true Plaintiff's statement in her EEOC charge that her neighbors, who have employment relationships with the Board, have subjected Plaintiff to on-going harassment and threats, Plaintiff has not shown that Defendant itself subjected Plaintiff to harassment since she voluntarily resigned from her employment. Nor has Plaintiff shown that Defendant directed her neighbors' actions. As noted previously, Plaintiff did not take any discovery in this case and has not submitted any evidence to support her claims. It is further noted that Judge Woods in his opinion addressed Plaintiff's allegation that her neighbors were harassing her and found that "Even if the Court accepts this unsupported allegation as

true, there is no evidence that the Board has taken an adverse employment action against Plaintiff" since April 22, 1991, when it placed Plaintiff on medical leave of absence. (Woods Nov. 18, 1999 opinion, p. 8) All of Plaintiff's claims are time-barred.

### 4. *Prima Facie Case*

■ Alternatively, Defendant claims that Plaintiff has not presented *prima facie* claims under Title VII, the ADA and the ADEA. (Because Plaintiffs claims are time-barred there is no need to address these arguments. However, the argument is addressed briefly below.)

With regard to plaintiff's claims under Title VII, the ADEA, and the ADA, the burden-shifting analysis under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and generally used with modifications to fit each type of claim. See *McDonnell Douglas/Burdine* (Title VII); *Plant v. Morton*, 212 F.3d 929, 936 (6th Cir.2000)(ADA); *Wexler v. White's Fine Furniture, Inc.*, 246 F.3d 856, 862 (6th Cir.2001)(ADEA). A *prima facie* case of discrimination under Title VII, the ADEA and the ADA all require that the employee is subjected to an adverse employment action. In this case, liberally construing her Complaint, the underlying EEOC charge and the documents submitted by Plaintiff in response to Defendant's motion, Plaintiff has not pointed to any adverse employment action by Defendant since Plaintiff was placed on medical leave on April 22, 1991. Plaintiff submitted her resignation by way of a letter dated September 9, 1999, effective July 1, 1999. (Ex. F, Defendant's Brief, Schneider Aff., letter attached) Plaintiff has failed to rebut Ms. Schneider's affidavit which indicates that Defendant had not taken any further

or additional disciplinary action between April 22, 1991 and June 30, 1999, and subsequent to Plaintiff's effective retirement date of July 1, 1999, (Ex. F, Defendant's Brief, Schneider Aff., Pars. 7 and 11) Plaintiff's conclusory and unsupported allegations in her EEOC charge that her neighbors are spying on her do not constitute adverse employment action for two reasons. First, Plaintiff has not shown that any such actions, even if true, were at the direction of Defendant. Secondly, even if the spying was at the Defendant's direction, Plaintiff did not suffer any adverse employment action, such as a demotion or involuntary termination, other than Plaintiff's own voluntary resignation. Plaintiff's claims under Title VII, the ADEA and the ADA must be dismissed for failure to state a *prima facie* case.

### C. *Defendant's Motion for Injunctive Relief to Enjoin Plaintiff from Filing Any Causes of Action Against Defendant unless after a judicial Preview Occurs, Leave of Court is Granted*

Defendant claims that by bringing this third cause of action against the same Defendant, involving the same issues and operative facts, Plaintiff has demonstrated herself to be a vexatious litigant. Defendant further claims that she has forced Defendant to divert resources away from the education of the children in order to defend Plaintiff's frivolous legal claims. Defendant seeks an order that as a condition precedent to bringing further action against Defendant, Plaintiff must first seek permission from the Court to file a new cause of action.

■ The Sixth Circuit has held that district courts may properly enjoin vexatious litigants from filing further actions against a defendant without first obtaining leave of court. *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998); See also, *Filipas v. Lemons*, 835

F.2d 1145, 1146 (6th Cir.1987). "There is nothing unusual about imposing prefiling restrictions in matters with a history of repetitive or vexatious litigation." *Id.* at 269. A district court need only impose "a conventional prefiling review requirement." *Id.* The traditional tests applicable to preliminary injunction motions need not be applied since the district court's prefiling review affects the district court's inherent power and does not deny a litigant access to courts of law. See *In re Martin–Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984). A prefiling review requirement is a judicially imposed remedy whereby a plaintiff must obtain leave of the district court to assure that the claims are not frivolous or harassing. See e.g., *Ortman v. Thomas*, 99 F.3d 807, 811 (6th Cir.1996). Often, a litigant is merely attempting to collaterally attack prior unsuccessful suits. *Filipas*, 835 F.2d at 1146.

█ Plaintiff filed her first suit against Defendant in 1992, the second in 1998 and the third in 2000, eight years after the 1992 case. Plaintiff has also filed four EEOC charges against Defendant. The facts in all cases revolve around Defendant's employment of Plaintiff. Plaintiff was relieved of her classroom duties on December 10, 1990 and placed on unpaid medical leave on April 22, 1991. In the first suit, this Court addressed the claims against Defendant involving the December 10, 1990 and April 22, 1991 actions by Defendant. The second suit also addressed the same actions by Defendant. In the second suit, Judge Woods found that Plaintiff failed to show any adverse action by Defendant since placing Plaintiff on medical leave on April 22, 1991. This Court in the third action has also so found. Effective July 1, 1999, Plaintiff voluntarily resigned from Defendant's employ. At this juncture, it appears that Plaintiff can no longer have any adverse employment claims against Defendant since she is no longer employed by Defendant. Any complaints Plaintiff may have, if any, appear to be against her neighbors. These claims against her neighbors appear to be state law tort claims which Plaintiff may pursue in State Court. Because Plaintiff may no longer have any adverse employment claim against Defendant since she no longer is employed by Defendant, the Court will require Plaintiff to submit any future cause of action against Defendant to the Court for a prefiling review. Plaintiff may only file a future case against Defendant if the Court allows Plaintiff to file a case after reviewing any future Complaint against Defendant. Defendant's Motion for Injunctive relief seeking prefiling review before any subsequent actions may be filed by Plaintiff against Defendant is granted.

### III. *CONCLUSION*

For the reasons set forth above,

IT IS ORDERED that Plaintiff's Motion to Bar Camera and Video Spying (**Docket No. 13, filed June 28, 2001**) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (**Docket No. 18, filed August 13, 2001**) is GRANTED.

IT IS FURTHER ORDERED that this cause of action is DISMISSED with prejudice.

IT IS FURTHER ORDERED that Defendant's Motion for Injunctive Relief to Enjoin Plaintiff from filing any further causes of action against Defendant without leave of court (**Docket No. 19, filed August 13, 2001**) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff is enjoined from filing any subsequent causes of action against Defendant Detroit Board of Education without first obtaining leave of the Court. **The**

CLERK is directed not to file any subsequent causes of action filed by Plaintiff against Defendant Detroit Board of Education without leave of the Court.

IT IS FURTHER ORDERED that Wesley and Roland Davis' Motion to Cancel Subpoena issued by Plaintiff (**Docket No. 27, filed September 26, 2001**) is GRANTED.

IT IS FURTHER ORDERED that all other subpoenas issued by Plaintiff are QUASHED, including the subpoena issued to Lorraine and Reginald Cunningham pursuant to a letter submitted to the Court by Mark K. Wasvary, attorney for the Cunninghams.